1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ISAAC DURAN,                               Case No.  1:21-cv-01290-JLT-HBK (PC)

12                  Plaintiff,                  FINDINGS AND RECOMMENDATIONS TO
                                                PERMIT PLAINTIFF TO PROCEED ON
13         v.                                   COGNIZABLE CLAIMS AND DISMISS
                                                REMAINING CLAIMS AND DEFENDANTS[1]
14   J. BURNS, W. CERVANTES, G. LOR, E.
     CURIEL, O. VALLADOLID, and S.              14-DAY OBJRCTION PERIOD
15   BARTOLO.,

16                  Defendants.

17

18         Plaintiff Isaac Duran  initiated this while a prisoner by filing a pro se civil rights action

19   under 42 U.S.C. § 1983.  (Doc. No. 1, "Complaint").  As more fully set forth below, the

20   undersigned finds the Complaint states cognizable Eighth Amendment excessive force claims

21   against Defendants Burns, Cervantes, Lor, Bartolo, Valladolid, and Curiel, and cognizable Eighth

22   Amendment failure to intervene claims against Defendants Cervantes, Lor, Bartolo, Valladolid,

23   and Curiel, but fails to state any other cognizable claim.  Therefore, the undersigned recommends

24   that Plaintiff be allowed to proceed on the above claims against Defendants Burns, Cervantes,

25   Lor, Curiel, Valladolid, and Bartolo, and the remaining claims be dismissed without prejudice.

26   Because the Court received notice on November 29, 2023 that Plaintiff is deceased before he

27   _____

28   [1] The undersigned submits these factual findings and recommendations to the District Court pursuant to 28
     U.S.C. §636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

1    responded to the Court's third screening order which found the Complaint stated the above

2    cognizable claims, the Court issues these Findings and Recommendations in order that this case

3    may be served on Defendants instead of sua sponte dismissed.  Although Federal Rule of Civil

4    Procedure 25 permits a decedent's successor or representative to file a motion for substitution—

5    which must be filed within ninety days of service of a statement noting the death—adherence to

6    the Rule 25 procedure here would not be feasible until a Defendant has been served.

7                                        **SCREENING REQUIREMENT**

8           Plaintiff commenced this action while in prison and is subject to the Prison Litigation

9    Reform Act ("PLRA"), which requires, *inter alia*, the court to screen any complaint that seeks

10   relief against a governmental entity, its officers, or its employees before directing service upon

11   any defendant.  28 U.S.C. § 1915A.  This requires the Court to identify any cognizable claims and

12   dismiss the complaint, or any portion, if is frivolous or malicious, that fails to state a claim upon

13   which relief may be granted, or that seeks monetary relief from a defendant who is immune from

14   such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

15          At the screening stage, the Court accepts the factual allegations in the complaint as true,

16   construes the complaint liberally, and resolves all doubts in the Plaintiff's favor.  *Jenkins v.*

17   *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.

18   2003).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or

19   unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

20   1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual

21   basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227.

22          The Federal Rules of Civil Procedure require only that the complaint include "a short and

23   plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).

24   Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient

25   factual detail to allow the court to reasonably infer that each named defendant is liable for the

26   misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,

27   572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not

28   sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.

*Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading could be cured by the allegation of other facts, the *pro se* litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  However, it is not the role of the Court to advise a *pro se* litigant on how to cure the defects.  Such advice "would undermine district judges' role as impartial decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.

## BACKGROUND AND SUMMARY OF OPERATIVE PLEADING

### A.  Procedural History

Plaintiff initiated this action by filing a Complaint under 42 U.S.C. § 1983.  (Doc. No. 1). On June 23, 2023, the undersigned screened the Complaint and found it stated a cognizable Eighth Amendment excessive force claim against Defendant Burns, but no other claims.  (Doc. No. 19 at 1).  The Court directed Plaintiff to file an amended complaint, file a notice to voluntarily dismiss the Defendants and other claims deemed not cognizable, or stand on his Complaint subject to the undersigned issuing findings and recommendations to dismiss the Defendants and other claims deemed not cognizable.  (*Id*. at 9-10).  On July 25, 2023 Plaintiff filed a notice that he "intends to stand on his complaint as screened . . ."  (Doc. No. 20 at 1).  On the same day, Plaintiff filed a First Amended Complaint.  (Doc. No. 21, "FAC").  On August 2, 2023, the undersigned issued a second screening order finding the FAC failed to state a claim and affording Plaintiff the option to either stand on his original complaint, stand on his amended complaint, or file a notice of voluntary dismissal.  (Doc. No. 22 at 5-6).  On September 13, 2023, Plaintiff filed a pleading titled "Plaintiff's Notice of Intent to Proceed on Original, Not Amended Complaint."  (Doc. No. 23).  In it, Plaintiff contends that the Court erred in finding no claims

1    were stated in his original Complaint as to Defendants Cervantes, Lor, Bartolo, Valladolid, and

2    Curiel.  (*See generally id*.).

3           On October 13, 2023, the undersigned issued a third screening order, finding that

4    Plaintiff's original Complaint stated cognizable Eighth Amendment excessive force claims

5    against Defendants Burns, Cervantes, Lor, Bartolo, Valladolid, and Curiel, and cognizable Eighth

6    Amendment failure to intervene claims against Defendants Cervantes, Lor, Bartolo, Valladolid,

7    and Curiel, but no other claims.  (Doc. No. 24 at 1).  The Screening Order afforded Plaintiff the

8    option to file a notice to confirm he seeks to proceed only on his claims deemed cognizable in the

9    Court's order, or stand on his Complaint subject to the Court recommending the district court

10   dismiss any remaining claims not deemed cognizable.  (*Id*.).  On November 29, 2023, the

11   Screening Order was returned to the Court "Undeliverable, Deceased."  (*See* docket).

12          **B.  Summary of Operative Pleading**

13          The Complaint names the following Defendants: (1) J. Burns, Sergeant at CSP-Corcoran;

14   (2) W. Cervantes, Correctional Officer ("C/O") at CSP-Corcoran; (3) G. Lor, C/O at CSP-

15   Corcoran; (4) E. Curiel, C/O at CSP-Corcoran; (5) O. Valladolid, C/O at CSP-Corcoran; and (6)

16   S. Bartolo, C/O at CSP-Corcoran.  (Doc. No. 1 at 2-3).  The Complaint sets forth four claims for

17   relief based on an incident that occurred on October 15, 2019: (1) Excessive use of force under

18   the Eighth Amendment, and state law tort claims of (2) battery; (3) assault; and (4) intentional

19   infliction of emotional distress.  (*Id*. at 4, 10).  Attached to the Complaint are 76 pages of exhibits,

20   including medical records, copies of Plaintiff's grievances and institutional responses, and the

21   incident report on the use of force incident giving rise to the Complaint.[2]  The following facts are

22

23   ──────────────
     [2] The Court's review is limited to the complaint, exhibits attached and materials incorporated into the
24   complaint by reference, and matters of which the court may take judicial notice.  *Petrie v. Elec. Game
     Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c).  Because the exhibits are
25   attached and incorporated in the Complaint, the Court may consider the exhibits when their authenticity is
     not questioned.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (noting at 12(b)(6) stage
     material properly submitted as part of the complaint may be considered without converting the motion to
26   dismiss to a motion for summary judgment).  While the Court accepts the factual allegations in the
     Complaint as true, it need not accept as true allegations that contradict matters properly subject to judicial
27   notice or by exhibit.  *See Mullis v. United States Bankr.Ct.*, 828 F.2d 1385, 1388 (9th Cir.1987); *Sprewell
     v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d
28   1187 (9th Cir. 2001).

1   presumed true at this stage of the proceedings.

2         On October 15, 2019, Plaintiff was assigned to the "Security Housing Unit (Segregation)

3   and housed in Facility 4A, Building 1R, Cell #61." (*Id.* at 4 ¶ 5).  At around 3:00 P.M., Plaintiff

4   "allegedly ejected a manufactured spear from a hole in the plexiglass of [his] door at Inmate Toki

5   who was being escorted on the tier by Defendants Bartolo and Curiel." (*Id.* at 4-5 ¶ 6).  The "so-

6   called spear" did not hit anyone. (*Id.* at 5 ¶ 7).  Shortly thereafter, an alarm was pressed, and

7   additional correctional officers and medical staff arrived at the housing unit. (*Id.* ¶ 8).  Defendant

8   Burns was among those who reported to the scene. (*Id.* ¶ 9).  Defendant Burns approached

9   Plaintiff's cell door and told him to "cuff up." (*Id.*).  Plaintiff "stripped out, placed [his] hands

10   through the food port of [his] cell and allowed staff to handcuff [him] behind the back." (*Id.*).

11   Defendants Valladolid and Bartolo then signaled to the control booth to open Plaintiff's cell door,

12   and they escorted him to the rotunda of the housing unit. (*Id.* ¶ 10).  At the rotunda, "they told

13   [Plaintiff] to kneel on a chair and [he] complied." (*Id.* ¶ 11).  Defendant Burns directed other

14   staff that had arrived to return to their assignments. (*Id.* at 5-6 ¶ 12).  Defendant Burns asked

15   Plaintiff, "What if you would [have] got my officers?" (*Id.* at 6 ¶ 13).  With a closed fist,

16   Defendant Burns hit Plaintiff in his left temple rendering him unconscious. (*Id.* ¶ 14).  Plaintiff

17   awoke on the ground to Defendants Burns, Valladolid, Bartolo, Lor, Cervantes, and Curiel

18   punching and kicking him. (*Id.* ¶ 15).

19         When Plaintiff was eventually allowed to sit back in the chair, Defendant Burns pushed

20   the back of Plaintiff's neck down onto the back of the chair, choking Plaintiff, while Cervantes

21   and Lor held Plaintiff down. (*Id.* ¶¶ 16-17).  Defendant Burns called Plaintiff a "punk bitch" and

22   told him that "every time you come out the cell this is going to happen." (*Id.* ¶ 18).  Defendant

23   Cervantes told Plaintiff, "Don't do nothing stupid or you will end up in a body bag." (*Id.* at 6-7

24   ¶ 19).  Then, Defendant Burns asked, "[D]o we have effective communication established?" (*Id.*

25   at 7 ¶ 20).  Plaintiff responded, "[Y]eah." (*Id.* ¶ 21).  Defendant Burns told Plaintiff, "I'm going

26   to take your [television] it's altered." (*Id.* ¶ 22).  Despite protests from Plaintiff, his television

27   and coaxial cable were taken from his cell. (*Id.* ¶ 23).  Staff returned Plaintiff to his cell. (*Id.*

28   ¶ 24).  Plaintiff, still wobbly and dizzy, had a severe limp while walking to his cell. (*Id.*).

Psychiatric Technician Ruiz evaluated Plaintiff, and she "only documented an abrasion/scratch on [his] left chin, left cheek, left side of [his] head, and right knee". (*Id.* ¶ 26). At the time, Plaintiff continued to feel wobbly and dizzy. (*Id.* at 8 ¶ 27). Following a shift change on October 16, 2019, at 2:00 P.M.,[3] Plaintiff informed correctional officers Rodriguez and Vargez of his symptoms, but they ignored him. (*Id.* ¶¶ 28-29). At 4:30 P.M., Plaintiff also informed Psychiatric Technician Armorillo of his symptoms. (*Id*. ¶ 30).   She directed staff to take Plaintiff out of his cell and escort him to the rotunda for a medical evaluation. (*Id.* ¶ 31). During this evaluation, Defendant Burns appeared and told Plaintiff, "I thought you refused medical treatment and [were] good." (*Id.* ¶ 32). Plaintiff replied, "I didn't say none of that." (*Id.* ¶ 33). Defendant Burns said, "I'll see you when you get back." (*Id.* ¶ 34). After this conversation, Plaintiff boarded an ambulance that the medical staff called to escort him to the Correctional Treatment Center ("CTC"). (*Id.* ¶ 35).

While at CTC, Physician Assistant Robin McConnell noted several injuries that Plaintiff had sustained, including "multiple blunt force trauma, multiple scalp bruising and abrasions, neck bruising, lower left lip swelling and tenderness, hematoma over the right and left temple, and left zygoma swelling." (*Id*. at 9 ¶ 36). McConnell also noted that Plaintiff had right knee pain, was unable to bear weight or walk, and unable to fully open his mouth due to right jaw pain and lip swelling. (*Id.* ¶ 37). Plaintiff was transferred to Adventist Health Bakersfield Emergency Room because he had lost consciousness and vomited. (*Id*. ¶ 38).

After the October 15, 2019, assault, "Defendants made outlandish report[s] claiming [Plaintiff] was on the ground in rotunda, handcuffed behind the back, thrashing side to side, and striking my face and head on the concrete floor-in order to explain away my injuries." (*Id.* at 9 ¶ 39, 54). As relief, Plaintiff seeks "$100,000 in compensatory and $100,000 in punitive damages against [Defendant] Burns for [his] 8th Amend. Claim.  $75,000 in compensatory and $75,000 in punitive damages against [Defendants] Cervantes, Lor, Curiel, Valladolid, and Bartolo each for [his] 8th Amend. Claim.  $100,000 in Compensatory and $100,000 in punitive damages against

---

[3] While the Complaint does not specify a date, the Court infers that the subsequent events described took place on October 16, 2019.

[Defendant] Burns for [his] state tort claims.  $75,000 in compensatory and $75,000 in punitive damages against [Defendants] Cervantes, Lor, Curiel, Valladolid, and Bartolo each for [his] state tort claim[s]." (*Id.* at 12).

## ANALYSIS AND APPLICABLE LAW

### A.  Excessive Use of Force

Inmates who sue prison officials for injuries sustained while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, or, if the claim is pursued by a pre-trial detainee who is not convicted, under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520 (1979) (holding that under the Due Process Clause, a pre-trial detainee may not be punished prior to conviction).  The Eighth Amendment protects inmates from inhumane methods of punishment and conditions of confinement.  *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." *Farmer*, 511 U.S. at 832..  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate . . . the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

Here, the Complaint states a cognizable claim of excessive force against Defendant Burns, in his individual capacity, sufficient to survive the "low threshold" for *sua sponte* screening pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b).  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).  While Plaintiff was handcuffed and kneeling on a chair in the rotunda of the housing unit, Defendant Burns punched Plaintiff in the left temple, knocking him to the floor unconscious.  (Doc. No. 1 at 6).  Burns joined with the other Defendants in punching and kicking Plaintiff while he was on the ground, unconscious and handcuffed.  (*Id.*).  Defendant Burns then had Plaintiff placed back in the chair and "pushed the back of [Plaintiff's] neck down [onto the rim of his chair] choking him."  (*Id.*).  Plaintiff alleges that the assault "occurred while [he] was handcuffed behind the back in a vulnerable[,] defenseless position- without provocation."  (*Id.* at 7).  Although the encounter with Defendant Burns began with Plaintiff throwing a "manufactured spear," no injuries resulted from Plaintiff's actions, and Defendant Burns applied significant force on Plaintiff when he posed no plausible threat to either prison staff or inmates.  Thus, Defendant Burns' use of force was not necessary to maintain order or restore discipline.  *Hudson*, 503 U.S. at 6-7.

Given that Defendant Burns punched Plaintiff in the head hard enough to knock him unconscious, punched and kicked him while he was on the ground, and choked him with the edge of a chair, all while Plaintiff was handcuffed, the Court reasonably infers that Defendant Burns used force "maliciously and sadistically for the very purpose of causing harm."  *Farmer*, 511 U.S. at 835.  Accordingly, Plaintiff states a cognizable Eighth Amendment excessive force claim as to Defendant Burns.

The Complaint also states a cognizable excessive use of force claim against Defendants Cervantes, Lor, Curiel, Valladolid, and Bartolo.  While the Complaint does not provide extensive detail as to the actions of these Defendants, it asserts that after Defendant Burns punched Plaintiff in the face and knocked him unconscious, Plaintiff then "regained consciousness as Burns, Valladolid, Bartolo, Lor, Cervantes and Curiel punched and kicked [him] while [he] was on the ground."  (Doc. No. 1 at 6).  Plaintiff remained in handcuffs at this point and did not plausibly pose a threat to others.  (*Id*. at 5).  Thus, Defendants Valladolid, Bartolo Lor, Cervantes, and

1    Curiel's use of force was not necessary to maintain order or restore discipline, and instead

2    appeared to be used "maliciously and sadistically for the very purpose of causing harm." *Hudson*,

3    503 U.S. at 6-7; *Farmer*, 511 U.S. at 835.

4          The Court initially found Plaintiff's allegations as to Defendants Valladolid, Bartolo, Lor,

5    Cervantes, and Curiel too conclusory to state an Eighth Amendment claim. (*See* Doc. No. 19 at

6    7). However, upon rereview of case , the Court finds that Plaintiff's allegations, while minimal,

7    are sufficient to survive the "low threshold" for *sua sponte* screening pursuant to 28 U.S.C.

8    Sections 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123. In *Rutherford v. City of*

9    *Berkeley*, the Ninth Circuit considered whether summary judgment for defendants was warranted

10   where a Plaintiff alleging excessive force by several police officers could not state precisely what

11   each officer did, although he could identify the officers present when he was assaulted.  780 F.2d

12   1444, 1448 (9th Cir. 1986) (overruled on other grounds by *Graham v. Connor*, 490 U.S. 386

13   (1989).)   In reversing the District Court's grant of summary judgment in favor of defendants, the

14   court held:

15                   While Rutherford could not specifically state whether defendants
                     Officers Houpt, McBride or Hood punched or kicked him, he did
16                   testify that they were among the five or six officers who were
                     surrounding him while he was being beaten and that he saw each of
17                   their faces while he was being beaten.  These three officers agreed
                     that they were among the five or six officers who detained, arrested
18                   and handcuffed Rutherford, but denied punching or kicking
                     Rutherford.  From this evidence, a jury could reasonably infer that
19                   the named officers were participants in punching or kicking
                     Rutherford.
20

21   *Id*. Similarly, here, Plaintiff has not provided the Court with detailed allegations as to the actions

22   of each officer he alleges used excessive force against him.  However, Plaintiff has adequately

23   alleged actions by Defendants Valladolid, Bartolo, Lor, Cervantes, and Curiel that if true,

24   constitute excessive use of force in violation of the Eighth Amendment.  Accordingly, the

25   Complaint states a cognizable Eighth Amendment excessive force claim as to these five

26   Defendants.

27          ////

28          ////

9

1  **B.  Failure to Intervene**

2        A prison official may be liable under § 1983 if he is aware that a fellow official is

3  violating a prisoner's constitutional rights but fails to intervene.  *See Cunningham v. Gates*, 229

4  F.3d 1271, 1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow

5  officers violate the constitutional rights of a suspect or other citizen.") (citation omitted); *see also*

6  *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir. 1990) ("An officer who is

7  present at the scene who fails to take reasonable steps to protect the victim of another officer's

8  use of excessive force can be held liable under section 1983 for his nonfeasance.").  A failure to

9  intervene can support an excessive force claim where the bystander officers had a realistic

10  opportunity to intervene, but failed to do so.  *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th

11  Cir. 2003); *Cunningham*, 229 F.3d at 1289.

12        Liberally, construed, the Complaint alleges that in addition to using excessive use of force

13  against Plaintiff, Defendants Valladolid, Bartolo, Lor, Cervantes, and Curiel also failed to

14  intervene when Defendant Burns was engaging in excessive use of force against Plaintiff.  (*See*

15  Doc. No. 1 at 5-7).  In particular, these five Defendants took no action to protect Plaintiff after

16  Defendant Burns hit Plaintiff in the temple with a closed fist, knocking him unconscious.  (*Id*. at

17  6).  Instead, the other Defendants joined Burns in punching and kicking Plaintiff.  (*Id*.).  And

18  when Defendants Burns was later "push[ing] the back of [Plaintiff's] neck down, choking [him]

19  with the rim of [a] chair" while Plaintiff was handcuffed, the other Defendants again did nothing

20  to prevent Burns' excessive use of force.  (Doc. No. 1 at 6).  Indeed, the Complaint alleges

21  Defendants Cervantes and Lor held Plaintiff down as Defendant Burns was pushing his neck into

22  the edge of a chair.  (*Id*.). The Complaint sufficiently alleges that Defendants Valladolid, Bartolo,

23  Lor, Cervantes, and Curiel were present at the scene and had a reasonable opportunity to stop

24  Defendant Burns from further harming Plaintiff but failed to do so.  Thus, the Complaint states an

25  Eighth Amendment failure to intervene claim against these five Defendants.

26  **C.  State Law Claims**

27        The California Government Claims Act "requires, as a condition precedent to suit against

28  a public entity [and its employees], the timely presentation of a written claim and the rejection of

1    the claim in whole or in part." *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1477

2    (9th Cir. 1995).  Under California Government Code § 945.6, a suit against a public entity must

3    be within six months after "delivery of your right to sue letter" has been given.  *See Moore v.*

4    *Twomey*, 120 Cal. App. 4th 910, 918 (2004) (recognizing and repealing by implication that in the

5    case of an unrepresented incarcerated plaintiff, the pro se complaint is deemed filed on delivery to

6    the correctional authorities following the "mailbox rule").  In other words, a pro se Plaintiff has

7    six months to seek relief in court after the application to the entity is denied.  This six-month

8    period essentially operates as a statute of limitations.  Even substantial compliance with this

9    requirement does not excuse the late filing of the government claim.  *Hunter v. Los Angeles*

10   *County,* 262 Cal. App. 2d 820, 822 (1968).  The six-month statute of limitations cannot be

11   extended by any provision outside of the Act.  *Martell v. Antelope Valley Hosp. Medical Center*,

12   67 Cal. App. 4th 978, 982 (1998).  Compliance with the claims statutes is mandatory.  *Farrell v.*

13   *County of Placer,* 23 Cal. 2d 624, 620 (1944).

14       Plaintiff provides proof that he timely filed a claim with the Government Claims Program

15   ("GCP") regarding the October 15, 2019 use of force incident, and received a rejection notice on

16   June 18, 2020.  (Doc. No. 1 at 25).  The GSP notified Plaintiff that he had "only six (6) months

17   from the date this notice was personally delivered or deposited in the mail to file a court action on

18   this claim."  (*Id.*).  Plaintiff, however, did not file this court action on the state tort claims until

19   August 24, 2021, more than fourteen months after Plaintiff received his "right to sue" letter.

20   Because Plaintiff failed to comply with the requirements of the Government Claims Act,

21   Plaintiff's state law tort claims are barred.  *See* Cal. Gov. Code § 945.6, subd. (a)(1).

22       **D.  False Statements**

23       The Complaint alleges that "Defendants made outlandish report[s] claiming I was on the

24   ground in rotunda, handcuffed behind the back, thrashing side to side, and striking my face and

25   head on the concrete floor-in order to explain away my injuries."  (Doc. No. 1 at 9).  Liberally

26   construed, the Complaint alleges that Defendants made false statements in their Rule Violation

27   Report.  However "[f]alse statements, alone, do not violate a prisoner's constitutional rights."

28   *Alverto v. Henderling*, 2018 WL 7018718, at *1 (W.D. Wash. Oct. 2, 2018), *report and*

*recommendation adopted*, 2019 WL 174674 (W.D. Wash. Jan. 11, 2019).  The Defendants'

alleged false statements therefore do not provide a basis for a constitutional claim.

### E.      Fifth Amendment Deprivation of Property

Liberally construed, Plaintiff asserts a Fifth Amendment unlawful taking of property

without just compensation claim based on Defendant Burns stealing or giving away the personal

items in his cell.  However, such an action is barred, because California provides state prisoners

adequate post-deprivation remedies through the Government Claims Act sufficient to satisfy the

due process clause.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding that "a negligent or

intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state

has an adequate post deprivation remedy."); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.

1994) (holding that California has an adequate post-deprivation remedy through the Government

Claims Act process).  Accordingly, Plaintiff cannot state a Fifth Amendment Due Process Claim

based on the taking of his property.

Accordingly, it is **RECOMMENDED**:

1.      This action proceed on Plaintiff's Eighth Amendment excessive use of force

claims against Defendants J. Burns, W. Cervantes, G. Lor, E. Curiel, O. Valladolid, and S.

Bartolo, and Eighth Amendment failure to intervene claims against Defendants W. Cervantes, G.

Lor, E. Curiel, O. Valladolid, and S. Bartolo.

2.      All other claims be dismissed from this action based on the Complaint's failure to

state any other claim upon which relief may be granted.

////

### NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District

Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days

after being served with a copy of these Findings and Recommendations, a party may file written

objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned,

"Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge

will review these Findings and Recommendations under 28 U.S.C. § 636(b)(1)(C).  A party's

1    failure to file objections within the specified time may result in the waiver of certain rights on

2    appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

3

4    Dated:    February 28, 2024

5                                                          HELENA M. BARCH-KUCHTA
                                                           UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13